UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NHAN KHIEM TRAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 1:01cv00238 (ESH) |
| | ) | **FILED** |
| UNITED STATES DEPARTMENT OF | ) | NOV 2 0 2001 |
| JUSTICE, et al., | ) | NANCY MAYER WHITTINGTON, CLERK |
| | ) | U.S. DISTRICT COURT |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This motion is one of a series brought by plaintiff, proceeding pro se, under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against various agencies of the United States government. In this case, plaintiff has sought documents from the Internal Revenue Service ("IRS"), which has now moved for summary judgment. In response, plaintiff has filed a cross-motion for summary judgment, and both parties have filed oppositions and replies. Upon consideration of these pleadings and the entire record therein, the Court will grant in part and deny in part defendant IRS's motion for summary judgment, and will deny plaintiff's cross-motion for summary judgment.

## BACKGROUND

Plaintiff Nhan Kheim Tran is incarcerated at the Federal Correctional Institution in Texarkana, Texas. Defendant IRS is an agency of the executive branch of the United States government.

1



In April 2000, plaintiff made a FOIA request for "any and all documents" pertaining to him from the IRS. (See Declaration of Sarah Tate ("Tate Decl.") ¶ 3, Ex. A.). Plaintiff originally contacted the District of Columbia office of the IRS but was guided to, and eventually contacted the Houston, Texas IRS district disclosure office. The Houston office searched the IRS computerized tax account information for both open and closed activity pertaining to plaintiff, finding transcripts of plaintiff's tax account for the years 1988 and 1989. (See Declaration of Robert Cortez ("Cortez Decl.") ¶ 4.) The transcripts show large value assessments for each of those years, which usually originate in the Examination Division or the Criminal Investigation Division ("CID") of defendant. (Cortez Decl. ¶ 4.) Although the computer information showed no activity pertaining to plaintiff in either division, it did indicate a Non-Masterfile account.[1] (Cortez Decl. ¶ 4.) The disclosure office directed the Non-Masterfile office to search the Non-Masterfile. (Cortez Decl. ¶ 4.) However, no information pertinent to plaintiff was found in the Non-Masterfile. (Cortez Decl. ¶ 4.)

Even though the computer information indicated no activity concerning plaintiff in the Examination Division or CID, the disclosure office contacted both offices and requested that they search for records pertaining to plaintiff. (Cortez Decl. ¶ 5.) Both offices reported that they found no records. (Cortez Decl. ¶ 5.)

Based on document locator numbers ("DLNs") from plaintiff's account for 1988 and 1989, the Houston disclosure office requested documents corresponding to the DLNs from the Federal Records Center. (Cortez Decl. ¶ 6.) The Federal Records Center responded that all of

---

[1]The Non-Masterfile consists of certain records pertinent to the assessment and collection of taxes, which the computerized records are not programmed to maintain. (Cortez Decl. ¶ 4.)

the requested documents had been destroyed.  (Cortez Decl. ¶ 6.)

The Houston disclosure office sent plaintiff copies of the transcripts of his account for the years 1988 and 1989 on July 18, 2000. (Cortez Decl. ¶ 7, Ex. C.)  Plaintiff administratively appealed the Houston disclosure office's response on July 29, 2000. (Tate Decl. ¶ 5, Ex. C.) On August 22, 2000, the Office of the Assistant Chief Counsel (Disclosure and Privacy Law) to the IRS responded to plaintiff's appeal in a letter explaining that plaintiff failed to perfect his appeal properly, because he had not indicated to which IRS office he sent his request, nor had he provided a copy of the request or the disclosure office's response.  (Tate Decl. ¶ 5, Ex. D.) Plaintiff provided the Assistant Chief Counsel with a copy of the Houston disclosure office's letter dated July 18, 2000. (Tate Decl. ¶ 6.)  Plaintiff's appeal was not processed before the filing of his complaint due to backlog. (Tate Decl. ¶ 6.)

Plaintiff's complaint was served on the United States Attorney's Office in the District of Columbia on February 12, 2001.  Soon thereafter, Sarah Tate with the Office of the Assistant Chief Counsel began an investigation into the search that had been conducted in response to plaintiff's request. (Cortez Decl. ¶ 8; Tate Decl. ¶ 7.)  Once again documents with specific DLNs were requested form the Federal Records Center. (See Tate Decl. ¶ 7.)  Once again, the Federal Records Center responded that the records had been destroyed, but this time the Center also suggested that the records might be within a numbering sequence that was skipped among their stored records. (Cortez Decl. ¶ 8.)

Upon analysis of plaintiff's complaint, Cortez and Tate also determined that a jeopardy assessment might have been made against plaintiff and that a search should be made for jeopardy

assessment records.[2] (See Cortez Decl. ¶ 8; Tate Decl. ¶ 7.) The Houston disclosure office

contacted Houston District Counsel and the Special Procedures Function to search for jeopardy

assessment records. The Special Procedures Function reported that it found no pertinent records,

but the Houston District Counsel located four pages of records. These documents were sent to

Sarah Tate, who in turn released them to plaintiff. (Cortez Decl. ¶ 8.) The Collection Division

also conducted a search but located no records. (Cortez Decl. ¶ 8.) In total, the IRS has released

to plaintiff the 1988 and 1989 transcripts, and four pages of jeopardy assessment records.

## LEGAL ANALYSIS

### I.      Summary Judgment Standard

Both parties have moved for summary judgment pursuant to Rule 56 of the Federal Rules

of Civil Procedure. Summary judgment is granted when there are no genuine issues as to any

material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(c). A genuine issue of material fact is one that could change the outcome of the litigation.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Summary judgment is appropriate

only when the "record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1984). The

moving party bears the responsibility of showing the absence of any genuine issue of material

fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant meets this

standard, the burden of proof shifts to the non-movant, who "must set forth specific facts

---

[2]Where, as here, an individual's FOIA complaint names the DEA, FBI, or the United
States Customs Service as a defendant and suggests that plaintiff was convicted in a criminal
case, it is possible that the conviction was for a crime involving illegal contraband or cash. Since
the income from such illegal activities is taxable, the IRS often assesses the federal taxes on the
value of the seized goods. These assessments may be jeopardy assessments.

showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). It is not enough for the non-movant, opposing a properly supported motion for summary judgment, to "rest on mere allegations or denials of his pleadings." Id. at 248.

In a FOIA case, the Court may award summary judgment solely on the information provided in affidavits or declarations when the affidavits or declarations describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). An agency must prove that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980) (internal citation and quotation omitted).

## II.    Adequacy of the Search

Under FOIA, a defendant agency is obligated to conduct a "reasonable" search for responsive records using methods which can be reasonably expected to produce the information requested by plaintiff to the extent it exists. Mendoza v. Secretary of the Army, No. 98-5454, 1999 WL 515478, at *1 (D.C. Cir. 1999); Patterson v. IRS, 56 F.3d 832, 841 (7th Cir. 1995); Weisburg v. DOJ, 705 F.2d 1344, 1351 (D.C. Cir. 1983). The agency need not "set forth with meticulous documentation the details of an epic search for the requested records," Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982), but it must show "that the search method was reasonably calculated to uncover all relevant documents." Weisburg v. DOJ, 745 F.2d 1476, 1485 (D.C. Cir. 1984); see Oglesby v. United States Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990)

(FOIA requires an agency to conduct only a reasonable search for requested records using "methods reasonably expected to produce the information requested"). Agency declarations in this regard are afforded a presumption of good faith. See SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Plaintiff challenges three aspects of the adequacy of defendant's search for documents responsive to his FOIA request – 1) that the agency failed to produce the Master File on him; 2) that the agency failed to produce the Non-Master file on him; and 3) that the Federal Records Center failed to produce documents with particular DLNs that were believed to pertain to him.[3] The Court will grant defendant's motion for summary judgment on the first two claims, but deny summary judgment with respect to the third.

The IRS has submitted declarations from Robert Cortez of the IRS Disclosure Office in Houston, Texas; Jennifer Best of the Tax Division of the U.S. Department of Justice; and Sarah Tate of the Office of the Assistant Chief Counsel to the IRS. As noted, these affidavits describe in detail the process by which defendant searched both the IRS computerized tax account database, or Master File, and the Non-Masterfile for information relating to plaintiff (Cortez Decl. ¶ 4); instructed the Examination, Criminal Investigation, and Collection Divisions to search for records pertaining to plaintiff (Cortez Decl. ¶ 5); searched the Federal Records Center for the documents using specific DLNs (Cortez Decl. ¶ 6); searched jeopardy assessment records for documents relating to plaintiff (Cortez Decl. ¶ 8); and ultimately released to plaintiff all of the

---

[3]Plaintiff also asserts that he is entitled to a Vaughn index in this case. (See Pl. Declaration ¶ 1.) However, pursuant to Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), such an index is proper only when documents have been withheld under an exemption in FOIA. Id. at 827-28. Here, defendant has not withheld any documents pertaining to plaintiff, and thus, a Vaughn index is unnecessary.

material that was found – the 1988 and 1989 transcripts, and the four pages of jeopardy assessment records (Cortez Decl. ¶¶ 7-8.)

Plaintiff's challenges with respect to the Master File and Non-Masterfile are without merit. Defendant has demonstrated that it searched both the Master File and Non-Masterfile for documents relating to plaintiff, and produced to him all documents that it identified – namely, the 1988 and 1989 transcripts, which are the years for which plaintiff filed tax returns. The search of the Master File and Non-Masterfile was therefore "reasonably calculated to uncover all relevant documents." Weisburg, 745 F.2d at 1485.

With respect to plaintiff's claim regarding the Federal Records Center, however, the Court finds that the declarations submitted by defendant are insufficient to support a grant of summary judgment. The Cortez Declaration notes that "[t]he transcripts of plaintiff's account for the years 1988 and 1989 listed several [] DLNs. These numbers are used by the Federal Records Center to retrieve supporting records for the corresponding entry on the transcript." After sending two requests to the FRC to retrieve the documents associated with those DLNs, "[t]he FRC responded that the requested records had been destroyed or were withing a numbering sequence that was skipped among their stored records." (Cortez Decl. ¶¶ 6,8.) The Court cannot find that defendant has completed an adequate search for these documents on the basis of these statements alone. Specifically, defendant must identify the possible locations of documents in a numbering sequence that is "skipped among the[] stored records" of the FRC, and then search those locations for records pertaining to plaintiff. Defendant has specifically identified documents that it believes may be responsive to plaintiff's request; it is not enough for the IRS to simply state that those documents are either "destroyed" or missing.

## III.   Attorney's Fees and Costs

Plaintiff also seeks attorney's fees and costs from the IRS.  FOIA permits a Court to award attorney's fees and costs, in its discretion, if a plaintiff substantially prevails.  5 U.S.C. § 552(a)(4)(E).  Plaintiff must demonstrate that the suit was reasonably necessary to obtain the requested records.  Church of Scientology v. USPS, 700 F.2d 486, 489 (9th Cir. 1983).  The complainant must show that he is "eligible" for an award, by demonstrating that he "substantially prevailed" in his request.  Weisberg, 745 F.2d at 1495.  That is, plaintiff bears the burden of proving that the prosecution of a FOIA action "could reasonably be regarded as necessary to obtain the information . . . and that a causal nexus exists between that action and the agency's surrender of that information."  The causal nexus test requires that the commencement of litigation be the "primary cause" of the documents' release.  Republic of New Afrika v. FBI, 645 F. Supp. 117, 119 (D.D.C. 1986).  Plaintiff has made no such showing in this case.[4]

Assuming, arguendo, that plaintiff had made such a showing, the Court would still have discretion over whether to award attorney's fees and costs.  This determination depends on the Court's balancing of four factors:  1) the benefit of the information released to the public; 2) the commercial benefit of the release to the plaintiff; 3) the nature of the plaintiff's interest; and 4) whether there was a reasonable basis in law for the agency's withholding.  Weisberg, 745 F.2d at 1498.  In this action, plaintiff has brought the suit entirely for his own benefit, having requested only documents and records pertaining to himself.  The information released is not of the type

---

[4]It does appear, however, that the filing of the complaint did catalyze the search that led to the production of the four pages of jeopardy assessment records.  (See Tate Decl. ¶ 7 ("Upon receipt of the complaint, I contacted the Houston Disclosure Office and reviewed with the Disclosure Officer the search that had been conducted by that office."))

that would "add to the fund of information that citizens may use in making vital political choices." Fenster v. Brown, 617 F.2d 740, 744 (D.C. Cir. 1979) (citing Blue v. BOP, 570 F.2d 529, 534 (5th Cir. 1978)). Moreover, where, as here, a litigant seeks disclosure for a commercial benefit or other personal reasons, an award of fees is usually inappropriate. See Tax Analysts v. U.S. Dept. of Justice, 965 F.2d 1092, 1095 (D.C. Cir. 1992). These discretionary factors therefore weigh heavily against the award of fees and costs, and the Court will therefore decline to do so.

## CONCLUSION

For the aforementioned reasons, defendant's motion for summary judgment is granted in part and denied in part. Plaintiff's cross-motion for summary judgment is denied.[5] A separate order accompanies this Opinion.

Ellen Segal Huvelle
United States District Judge

Dated: 11/15/01

---

[5]It is unclear on what basis plaintiff has filed a cross-motion for summary judgment, since the thrust of his argument is that defendant has failed to disclose all responsive documents.

9